# EXHIBIT A

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA, *ex rel.*
MARK OEHM,

                Plaintiff/Relator,

v.                              **DECISION AND ORDER**
                                               05-CV-242S

NATIONAL AIR CARGO, INC. and
CHRISTOPHER J. ALF,

                Defendants.

## I. INTRODUCTION

In this *qui tam* action, the Relator, Mark Oehm, alleges that Defendants National Air Cargo, Inc. and Christopher J. Alf violated the False Claims Act ("FCA"), 31 U.S.C. § 3729 *et seq.,* by falsely billing the Department of Defense for on-time and air freight deliveries. Recently, the United States reached a proposed plea and global settlement agreement with National Air Cargo that resolves this *qui tam* action, a separate civil forfeiture action,[1] and federal criminal charges.[2]

The proposed agreement provides that National Air Cargo will pay $28,000,400, in criminal fines, penalties, restitution, and payments to settle the civil actions. The Relator objects to this proposal because the government is offering him a share of only the amount allotted to settlement of this *qui tam* action — $7,371,000. The Relator maintains that he is statutorily entitled to share in the government's entire $28,000,400 recovery.

---

[1] See United States v. $7,429,000, 07-CV-704S.

[2] The federal criminal charges are filed against only National Air Cargo. (See United States v. National Air Cargo, 07-CR-254S.)

1

Presently before this Court is the Relator's Motion for a Fairness Hearing pursuant to 31 U.S.C. § 3730(c)(2)(B).  (Docket No. 15.)  The Government has responded in opposition, and the Relator has filed a reply memorandum.  For the following reasons, the Relator's motion is granted.

## II. BACKGROUND

The Relator was employed by National Air Cargo from 1997 to Spring 2001.[3] (Sedita Decl., Docket No. 18, ¶ 5.)  At some point in 2001 or 2002, the Relator telephoned the Department of Defense Hotline to report National Air Cargo's billing practices for military shipments.[4]  (Sedita Decl., ¶ 3.)  The Relator reported that Defendants entered false claims into "PowerTrack," an electronic payment processing system.  (Sedita Decl., ¶ 7.)  These claims for payment misrepresented the dates of certain deliveries made on behalf of the United States, and fraudulently represented that air service was used for certain deliveries, when in fact, the deliveries were trucked.  (Sedita Decl., ¶ 7.) As a result of these billing practices, Defendants received payments from the government that were inflated, excessive, and unearned.  (Sedita Decl., ¶ 7.)

The government began civil and criminal investigations into National Air Cargo and several individuals in March 2002, with the issuance of civil and criminal subpoenas demanding that certain documents be produced.  (Government's Memorandum, Docket No. 24, p. 2.)  Specifically, the government sought documentation related to (1) whether

---

[3] The Relator now co-owns and operates American Freight Transport, a freight forwarding company that competes with National Air Cargo for military shipment contracts.  (Government's Memorandum, Docket No. 24, Exhibits H and I.)

[4] The Relator claims that this contact was made in 2001.  (Sedita Decl., ¶ 3.)  The government claims that it was made on January 25, 2002.  (Government's Memorandum, p. 2.)

National Air Cargo billed the government an air rate for trucked freight, and (2) whether National Air Cargo billed the government an on-time rate for late freight — two concerns raised by the Relator in his complaint to the Department of Defense Hotline. (Government's Memorandum, pp. 2-3.) The Relator assisted in the government's investigation, which eventually became primarily a criminal investigation into National Air Cargo's billing practices. (Sedita Decl., ¶¶ 7-9; Government's Memorandum, p. 3.)

The government has now reached a proposed plea and global settlement agreement with Defendants that resolves the criminal prosecution and civil actions, and results in combined payments by National Air Cargo of $28,000,400. (Sedita Decl., ¶ 11.) Under the agreement, National Air Cargo will pay restitution of $4,400,000, a criminal fine of $8,800,000, and a penalty of $400. (Plea Agreement, Docket No. 18-2, ¶ 1.) It will also pay $7,429,000 to settle the civil forfeiture action, and an additional $7,371,000 to settle this *qui tam* action. (Plea Agreement, ¶¶ 30-40.) This Court provisionally accepted National Air Cargo's guilty plea on October 25, 2007. (Docket No. 12.) Sentencing is scheduled for March 6, 2008. (See United States v. National Air Cargo, 07-CR-254S, Docket No. 18.)

### III. DISCUSSION

The Relator requests that this Court conduct a Fairness Hearing pursuant to § 3730(c)(2)(B)[5] before it fully accepts National Air Cargo's plea and imposes sentence. He further requests that the Complaint be unsealed so that he can subpoena representatives of National Air Cargo to testify about the plea negotiations it engaged in with the

---

[5]Unless otherwise noted, all section cites are to Title 31 of the United States Code.

government. (Sedita Decl., ¶ 20.) It appears that the Relator intends to challenge the way the government structured the global settlement with National Air Cargo, with particular emphasis on whether the government did so to deprive him of an appropriate share of the recovery. (Relator's Memorandum, Docket No. 16, p. 4.) The Relator maintains that he is statutorily entitled to a percentage of the entire $28,000,400 recovered from National Air Cargo because the global settlement constitutes an alternate remedy under § 3730(c)(5) in which he is entitled to share.

The government opposes the Relator's motion on procedural and substantive grounds. First, it argues that the motion is premature because the Department of Justice has not yet approved the *qui tam* portion of the settlement and the Relator has not yet properly served the United States with his Complaint. Second, the government argues that the global settlement is not an alternate remedy under § 3730(c)(5) because the government did not enter into the agreement as an *alternative* to settling the *qui tam* action, but rather, in *addition* to settling it. Finally, the government argues that even if there is a Fairness Hearing, the Relator is not entitled to the discovery he seeks.

These issues are addressed below.

**A. Ripeness**

The government first argues that the Relator's motion is premature because the Department of Justice has not yet approved the settlement of this *qui tam* action. In its papers, the government stated that it would file a status report on this issue on December 21, 2007, but that report does not address whether the Department of Justice approved the settlement. (Docket No. 26.) Nonetheless, there is no suggestion by the government

4

that the agreement will not be approved; it appears to be a matter of simply waiting for approval. That being the case, this Court will proceed under the assumption that the Department of Justice will approve the *qui tam* portion of the global settlement, particularly because the plea, which references and incorporates the *qui tam* settlement, has already been agreed to by the government and provisionally accepted by this Court. Consequently, the lack of formal Department of Justice approval at this stage does not bar the Relator's motion.

The government also argues that the Relator's motion is premature because the Relator failed to serve the United States Attorney General with his Complaint, as required by Rule 4(i)(1) of the Federal Rules of Civil Procedure. In his reply memorandum, the Relator states that he cured this defect on December 3, 2007, by serving the Complaint on the Attorney General. (See Relator's Reply Memorandum, Docket No. 21, pp. 1-2.) Accordingly, this issue is moot.

**B.    Alternate Remedies under § 3730(c)(5)**

The FCA, enacted in 1863, imposes civil liability upon persons who knowingly present false or fraudulent claims for payment or approval to officers or employees of the United States. 31 U.S.C. § 3729(a); see also Vt. Agency of Natural Res. v. United States ex rel. Stevens, 529 U.S. 765, 769, 120 S.Ct. 1858, 1860, 146 L.Ed.2d 836 (2000). It was enacted "with the principal goal of 'stopping the massive frauds perpetrated by large [private] contractors during the Civil War.'" Vt. Agency of Natural Res., 529 U.S. at 781 (quoting United States v. Bornstein, 423 U.S. 303, 309, 96 S.Ct. 523, 46 L.Ed.2d 514 (1976)); see also United States v. Sakura Global Capital Markets, Inc., 377 F.3d 145, 151-

52 (2d Cir. 2004); United States ex rel. Mikes v. Straus, 274 F.3d 687, 692 (2d Cir. 2001)(explaining that the FCA was enacted "after disclosure of widespread fraud during the War-Between-The-States revealed that the union government had been billed for nonexistent or worthless goods, had been charged exorbitant prices, and had its treasure plundered by profiteering defense contractors") (citing United States v. McNinch, 356 U.S. 595, 599, 78 S.Ct. 950, 2 L.Ed.2d 1001 (1958)); cf. S. Rep. No. 345, at 1 (1986), as reprinted in 1986 U.S.C.C.A.N 5266, 5266 (describing the purpose of the FCA as "to enhance the Government's ability to recover losses sustained as a result of fraud against the Government").

The financial liability for any person who violates the FCA is significant: a civil penalty of not less than $5,000 and no more than $10,000, plus three times the amount of damages sustained by the government, and costs of the suit.[6] § 3729(a). The damages multiplier enables the government to recover its lost funds while also providing a financial incentive for private citizens to bring such suits. See Manning v. Utilities Mutual Ins. Co., Inc., 254 F.3d 387, 394 (2d Cir. 2001).

FCA actions may be commenced by either the government itself, see § 3730(a), or on behalf of the government by a private person (the relator) through a *qui tam* action, see § 3730(b)(1). Vt. Agency of Natural Res., 529 U.S. at 769; see also Mikes, 274 F.3d at 692 (noting that the FCA's *qui tam* provision is "designed to encourage private individuals to file suit by offering them a percentage of any money recovered"). If the government elects to intervene in a relator's *qui tam* action and recovers a judgment, the relator is

---

[6] If the person who violated the FCA meets the cooperation provisions of § 3729(a)(A)-(C), they may be liable for not less than twice, rather than three times, the government's damages. See § 3729(a).

entitled to between 15% and 25% of the recovery.  See § 3730(d)(1); see also United States v. Baylor Univ. Med. Ctr., 469 F.3d 263, 265 (2d Cir. 2006).  If the government declines to intervene, the relator may nonetheless pursue the claims and if successful, take a larger percentage of the recovery, between 25% and 30%.  See § 3730(d)(2); Baylor Univ. Med. Ctr., 469 F.3d at 265.  The government may also elect to pursue its FCA claims through "any alternative remedy available to the Government, including any administrative proceeding to determine a civil money penalty."  § 3730(c)(5).  If the government does so, the relator "shall have the same rights in such proceeding as such person would have if the action had continued under this section."  Id.

Here, the Relator argues that the criminal prosecution and civil forfeiture action pursued by the government against National Air Cargo constitute "alternate remedies" under the statute.  The core of the Relator's objection is his insistence that the government has unfairly allocated its $28,000,400 recovery from National Air Cargo among the criminal, civil forfeiture, and FCA actions.  But this argument is misplaced.  While it may be a valid objection to the fairness of the proposed FCA settlement, it does little to support a claim that the government's recovery has come as a result of an "alternate remedy" under § 3730(c)(5).

A plain reading of § 3730(c)(5) reveals that "alternate remedy" refers to any remedy pursued by the government in lieu of pursuing the FCA claims.  See, e.g.,United States *ex rel.* Bledsoe v. Cmty. Health Sys., Inc., 342 F.3d 634, 647 (6th Cir. 2003)(holding that "'alternate remedy' refers to the government's pursuit of any *alternative* to intervening in a relator's *qui tam* action" (emphasis added)).  That is, the existence of an "alternate

7

remedy" can be found only if the government has not pursued the FCA claims instituted by the relator. For example, when the government elects to substitute an administrative remedy rather than pursue a relator's FCA claims, the "alternate remedy" provision is implicated. See, e.g., United States ex rel. Barajas v. Northrop Corp., 258 F.3d 1004, 1013 (9th Cir. 2001)(finding that pursuit of an administrative suspension or debarment proceeding in lieu of the relator's *qui tam* FCA action constituted the pursuit of an "alternate remedy" under § 3730(c)(5)). But there is no support — either in the statute or the caselaw — for the construction that the Relator urges here, that "alternate remedy" includes those remedies pursued by the government *in addition* to its pursuit of FCA claims.

The cases relied on by the Relator are distinguishable because they involve circumstances where the government pursued other remedies instead of pursuing the FCA claims. See Bledsoe, 342 F.3d at 639 (government entered into separate settlement agreement that specifically excluded the *qui tam* FCA action); Barajas, 258 F.3d at 1011-12 (government entered settlement agreement without intervening in *qui tam* suit); United States v. Bisig, 02-CR-112, 2005 WL 3532554, at *3 (S.D.Ind. Dec. 21, 2005)(government pursued criminal charges and criminal forfeiture, but did intervene or resolve FCA claims). Here, the government has not entered the global settlement instead of resolving the *qui tam* action, it has done so as part of settling the FCA claims, assigning a sum certain dollar figure to settlement of this *qui tam* action. The Relator has not provided this Court with any case where remedies pursued by the government in addition to settlement of FCA claims were held to be "alternate remedies" under § 3730(c)(5).

8

The inclusion of the "alternate remedy" provision in the statute benefits both the government and the Relator. For the government, it provides flexibility on how best to pursue its fraud claims against the defendant. For the relator, it protects against any potential recovery being supplanted by the government's pursuit of other remedies in lieu of intervening in the *qui tam* action. But nothing in the statutory scheme suggests that the "alternate remedy" provision is intended to apply in circumstances where the relator's FCA claims are resolved as part of a larger settlement. The Senate Committee report confirms that Congress envisioned the "alternate remedy" provision to apply only when the government elects not to intervene in or pursue the relator's *qui tam* action:

> The Committee intends that if civil monetary penalty proceedings are available, the Government may *elect* to pursue the claim *either* judicially *or* through an administrative civil penalty proceeding. *In the event that the Government chooses to proceed administratively*, the qui tam relator retains all the same rights to copies of filings and depositions, to objections of settlements or dismissals, to taking over the action if the Government fails to proceed with 'reasonable diligence,' as well as to receiving a portion of any recovery.

S. Rep. No. 345, at 27 (1986), as reprinted in 1986 U.S.C.C.A.N 5266, 5292 (emphasis added).

Accordingly, this Court finds that the criminal prosecution (including the penalties, restitution, and fines) and the civil forfeiture proceedings are not "alternate remedies" within the meaning of § 3730(c)(5) under these circumstances. The Relator is therefore not entitled to recover any percentage of the global settlement allocated to these proceedings under an "alternate remedies" theory. But that does not end the inquiry. As stated above, the Relator objects to the fairness of the FCA settlement, which he is entitled to pursue

through a Fairness Hearing.

## C. The Relator's Entitlement to Discovery and a Fairness Hearing under § 3730(c)(2)(B)

The government may settle a *qui tam* action over the relator's objection. See § 3730(c)(2)(B). But it may do so only "if the court determines, after a hearing, that the proposed settlement is fair, adequate, and reasonable under all the circumstances." Id. The Relator objects to the fairness, adequacy, and reasonableness of the global settlement on the basis that it unfairly excludes a bulk of the financial recovery from the FCA portion of the settlement and fails to adequately account for his role as the principal source of information about National Air Cargo. Based on a letter from Relator's counsel to the government,[7] and the Relator's request to unseal the Complaint, it appears that the Relator intends to engage in discovery before the hearing.

The government recognizes a relator's right to a Fairness Hearing, but it argues that the hearing referenced in § 3730(c)(2)(B) is not an evidentiary one, and therefore, the Relator is not entitled to discovery. This argument is at odds with the Senate Report, which reveals that Congress envisioned that a relator would be entitled to an evidentiary hearing: "Any objections filed by the qui tam plaintiff may be accompanied by a petition for an *evidentiary hearing* on those objections." S. Rep. No. 345, at 26 (1986), as reprinted in 1986 U.S.C.C.A.N 5266, 5291 (emphasis added).

Moreover, the government opposes any discovery related to its negotiation of the

---

[7] See Government's Memorandum, Exhibit C. In the letter, the Relator's counsel requests that the government "maintain and not destroy any documents, emails or other papers concerning the Government's deliberations or calculations concerning the False Claims Act amount since it is likely that we will seek access to those records as part of the fairness determination." Id.

10

global settlement with National Air Cargo on the grounds that discovery of its internal deliberations is barred by the attorney-client, attorney work product, and deliberative process privileges. Relying on Swift v. United States, the government also argues that discovery into the government's settlement negotiations in *qui tam* cases is improper, and that the only purpose of the hearing is to provide a relator the opportunity "to convince the government not to end the case." 318 F.3d 250, 254 (D.C. Cir. 2003). But Swift does not involve the government's settlement of a *qui tam* action, and the court's decision does not relate to a relator's objection to a proposed settlement. In Swift, the government filed a motion to dismiss the *qui tam* action under § 3730(c)(2)(A); it did not seek to settle the action. The relator objected to dismissal, and requested a hearing under § 3730(c)(2)(A), not § 3730(c)(2)(B). Swift is therefore unhelpful in determining the scope of the hearing that a relator is entitled to when he or she objects to the government's proposed settlement of a *qui tam* action.

In this Court's view, § 3730(c)(2)(B) entitles a relator to a hearing if he or she objects to the government's proposed settlement of a *qui tam* action. The purpose of the hearing is to determine whether the proposed settlement is "fair, adequate, and reasonable under all the circumstances." § 3730(c)(2)(B). Here, the Relator has objected to the proposed settlement of this action on the basis that the government unfairly undervalued the FCA portion of the global settlement to reduce his share of the recovery and failed to adequately account for his role as the primary source of the government's information. In light of this objection, this Court finds that the Relator is entitled to a Fairness Hearing, the scope of which will be whether the FCA settlement amount is fair, adequate, and reasonable under

the totality of the circumstances of this case. This Court further finds that the Relator is entitled to discovery on this issue, subject to any claims of privilege. At this point, the Relator's request to unseal the Complaint so that he can subpoena representatives of National Air Cargo "to testify regarding particulars of its negotiation of its agreement with the government" is denied as beyond the scope of the Fairness Hearing. (Relator's Memorandum, pp. 7-8; Sedita Decl., ¶ 20.)

### IV.  CONCLUSION

For the foregoing reasons, the Relator's Motion for a Fairness Hearing is granted.

### V.  ORDERS

IT HEREBY IS ORDERED, that the Relator's Motion for a Fairness Hearing (Docket No. 15) is GRANTED.

FURTHER, that the Relator's Request to Unseal the Complaint is DENIED without prejudice.

FURTHER, that counsel shall appear before this Court on February 20, 2008, at 11:00 a.m. for a status conference to discuss issues related to the Fairness Hearing.

SO ORDERED.

Dated: February 15, 2008
       Buffalo, New York

/s/William M. Skretny
WILLIAM M. SKRETNY
United States District Judge

12