# EXHIBIT D

**DECLARATION OF ANN LUGBILL, COUNSEL FOR THE FERRARA RELATORS**

I, Ann Lugbill, duly swear under penalty of perjury the following:

1. My name is Ann Lugbill. I am personally acquainted with the legal issues and facts herein stated. I am admitted to the Bars of the District of Columbia and of the Supreme Court of Ohio. I was admitted to this Court in 1999 and practice in Ohio and Washington D.C. with the law firm of Murphy Anderson PLLC.

2. Together with Mark Hanna of our firm, I was and am counsel for the Relators and the Estate of the deceased Relator in *U.S. ex rel Ferrara, et al. v. Novo Nordisk, Inc., et al.*, No. 1:11-cv-00074. One of our clients passed away in March 2019.

3. This Declaration contains facts showing contributions of the *Ferrara* Relators and their Counsel to the Government's investigation and settlement of False Claims Act claims against Novo Nordisk, as well as the substantial harm and hardships they suffered as a result of their whistleblowing activities.

4. As Counsel for the *Ferrara* Relators since 2010, I spent many hours in face-to-face meetings with them, many more in lengthy telephone calls, and exchanged hundreds of factual emails with them. I have extensive and detailed knowledge of the facts relating to their contributions to this case and the hardships suffered as a result of their whistleblowing experiences.

5. In some instances I have personal first-hand knowledge of the facts. In addition, my statements are informed by my experience with whistleblowers, dating from the 1980s. I have been *qui tam* counsel in dozens of cases over several decades, including a number of pharmaceutical marketing cases, and co-authored a False Claims Act legal treatise and several published articles or book chapters regarding the False Claims Act and whistleblower retaliation.

I have extensive experience as a trial lawyer for a publicly-traded institutional pharmacy and am familiar with Ohio laws governing pharmaceutical storage and handling.

### I. First Hand Details of the Fraud (Senate Factor 1, DOJ Guideline 6 for Increase)

6. The *Ferrara* Relators were Novo Nordisk sales representatives, one an institutional representative (calling upon hospital providers) and the other serving as specialty representative (calling upon specialists, particularly endocrinologists). They were in a unique position to have direct, firsthand knowledge of Novo's fraudulent schemes. In their Complaint and in their extensive evidentiary disclosures to the Government, by multiple in-person interviews, documents, and memoranda, the *Ferrara* Relators provided extensive, firsthand knowledge of Defendant's marketing strategy, executed through its sales representatives, to downplay the Victoza REMS and important safety considerations. They provided extensive examples of misleading and unsafe marketing phraseology that Novo Nordisk sales representatives were instructed to make to physicians worried about Victoza's MTC cancer risk.

### II. Substantial Assistance During Government's Investigation and Pre-Trial Phase (Senate Factor 2, DOJ Guideline 8 for Increase)

7. The *Ferrara* Relators made their initial disclosures to the Government on December 17, 2010. On January 6, 2011, Mark Hanna and I met with Assistant U.S. Attorney for the District of Columbia Beverly Russell to further disclose the significance of Novo's misconduct and the drug safety ramifications.

8. Relators filed their Complaint on January 12, 2011 in the United States District Court for the District of Columbia in large part for the Government's convenience. At their own expense, Relators traveled from Ohio to Washington, D.C., leaving behind an infant and three preschool-age children, in order to meet with the Department of Justice and other Government

[2]

agents and attorneys in March 2011. Relators remained "on call" when new information came to them that could assist DOJ—thus the 70 memorandums and multiple document productions that the *Ferrara* Relators and Mark Hanna and I submitted to the Government.

    a. **March 10-11, 2011 Meetings**

    9.    The Government interviewed the *Ferrara* Relators for two days in March 2011, including a separate meeting with FBI agents and the now-retired D.C. Assistant U.S. Attorney Thomas Zeno, as part of a criminal investigation. I was present for Mr. Zeno's interview.

    b. **August 5, 2012 Meeting**

    10.    On August 5, 2012, a *Ferrara* Relator was interviewed a second time in Washington, D.C. by new DOJ Counsel William ("Will") Olson. During this meeting, where I was present with Mark Hanna, she provided additional information about how sales representatives were instructed to leave the REMS-required "Highlighted Information for Prescribers Document" and "Dear HCP letter" only with targeted physicians, and not to residents, fellows, or non-targeted prescribers. She detailed how once REMS information was left with a targeted physician, it was logged in a computer system to ensure that the same prescriber would never receive a second REMS safety message. This minimized knowledge of Victoza's REMS in the medical and pharmaceutical community and avoided obligations under Victoza's REMS.

    c. **Relators' Continued Assistance and Cooperation**

    11.    Between February 2011 and July 2014, the *Ferrara* Relators provided the Government nearly 70 memorandums supplementing their Complaint or providing supporting documentation. Topics include information on witnesses and doctors knowledgeable about Novo's REMS violations. A specific memo, dated September 26, 2013 and titled "Materiality of Novo's Failure to Comply with FDA REMS Requirements" contained a significant discussion on

why, despite physicians prescribing Victoza for approved on-label use, REMS violations are material to Medicare claims for Victoza. In this manner, the *Ferrara* Relators' evidence provided the Government with material support on how to legally and factually proceed with the REMS claims.

### III. Witness Credibility (Senate Factor 2, DOJ Guideline 9 for Increase)

12. The *Ferrara* Relators were found by the Government to be credible witnesses when interviewed on several occasions about Novo's fraudulent activities and upon whose information the Government relied in its criminal investigation(s). The *Ferrara* Relators would have been credible witnesses had this case proceeded to discovery or trial.

### IV. Counsel's Substantial Assistance (Senate Factor 2, DOJ Guideline 10 for Increase)

13. Counsel for the *Ferrara* Relators provided the Government with substantial assistance throughout its investigation. Counsel provided the Government with memoranda that described and analyzed the materiality of REMS and its enforcement through the False Claims Act. Counsel had numerous communications with the Government to assist in the investigation and develop the REMS legal theory. The memoranda sent by Relators' Counsel to the Government include:

| No. | Date | Subject[1] |
|---|---|---|
| 1 | 2/23/2011 | Use of personal email accounts and more documents that were found |
| 2 | 6/20/2011 | Disclosure Memo for amended complaints |
| 3 | 7/20/2011 | Victoza Boot Camp, ***[2] moving to Germany |
| 4 | 7/25/2011 | Flash drive with additional video files |
| 5 | 8/5/2011 | Snyder teleconference |
| 6 | 8/5/2011 | Snyder teleconference |
| 7 | 8/5/2011 | Timelines for Snyder and Hamdy teleconference |

---

[1] Identifying details of most non-party individuals and entities have been removed in the editing process.
[2] *** indicates non-party name redacted.

| 8 | 8/3/2011 | Search terms from DOJ |
|---|---|---|
| 9 | 8/3/2011 | Search terms selected by Relators |
| 10 | 8/3/2011 | *** internship at Novo HQ |
| 11 | 9/6/2011 | [Potential Witness] *** |
| 12 | 9/8/2011 | [Potential Witness] *** |
| 13 | 9/9/2011 | Use of computer system for call notes, voice mail, personal cell phones, etc. |
| 14 | 9/9/2011 | HOMA-B |
| 15 | 9/30/2011 | Sales Reps Recently Leaving Novo Employment |
| 16 | 10/25/2011 | Outside Marketing Consultant Toolhouse |
| 17 | 10/25/2011 | Former Novo Vice President *** |
| 18 | 12/9/2011 | Speakers and Skeptics spreadsheet |
| 19 | 1/9/2012 | Former Novo Sales Rep *** |
| 20 | 1/9/2012 | Former Novo Medical Science Liaison *** |
| 21 | 2/22/2012 | Former *** Director of Pharmacotherapy *** |
| 22 | 2/22/2012 | Former Novo Sales Representative *** |
| 23 | 2/22/2012 | New Victoza Marketing Piece |
| 24 | 2/22/2012 | *** Voucher Program |
| 25 | 2/24/2012 | Novo Nordisk Spokesperson Paula Deen |
| 26 | 2/24/2012 | Former Novo Regional Sales Director *** |
| 27 | 2/24/2012 | Former Novo Institutional District Business Manager *** |
| 28 | 2/24/2012 | Victoza Marketing Materials |
| 29 | 3/23/2012 | [Potential Witness] *** |
| 30 | 3/23/2012 | [Potential Witness] *** |
| 31 | 4/19/2012 | Dr. *** |
| 32 | 4/19/2012 | [Potential Witness] *** |
| 33 | 4/19/2012 | Change in Levemir Pregnancy Category |
| 34 | 5/11/2012 | New Levemir "e-detail" |
| 35 | 5/11/2012 | Former Novo Sales Representative *** |
| 36 | 5/11/2012 | Novo-sponsored Victoza educational program on Medscape website |
| 37 | 5/11/2012 | Recent changes to Ohio Medicaid coverage of Victoza |
| 38 | 6/12/2012 | Former Novo Diabetes Care Specialist *** |
| 39 | 6/12/2012 | Former Novo Senior Marketing Director *** |
| 40 | 7/19/2012 | *British Medical Journal* Articles on Novo Postmarketing Trials |
| 41 | 12/13/2012 | New print ad for Victoza |
| 42 | 12/13/2012 | Former Novo Nordisk Business Manager *** |
| 43 | 12/13/2012 | Former Novo Nordisk Trainer *** |
| 44 | 12/13/2012 | Novo's Marketing for Cancer Safety based on Insulin-like Growth Factor |
| 45 | 2/8/2013 | Degludec Pre-Marketing and Sales Training |
| 46 | 2/8/2013 | Levemir Sales in Long-term Care |

| | | |
|---|---|---|
| 47 | 2/8/2013 | [Potential Witness] , *** Assistant, Recent Phone Conversation with Relator |
| 48 | 2/14/2013 | Former Novo Employee *** |
| 49 | 2/14/2013 | New Levemir Marketing Video: Basal Insulin and Weight Concerns |
| – | 7/11/2013 | Kickbacks (memo not numbered) |
| 50 | 7/12/2013 | Marketing of Victoza for Polycystic Ovary Syndrome (PCOS) |
| 51 | 7/12/2013 | Former Novo Manager *** |
| 52 | 9/11/2013 | Former Novo Manager *** |
| 53 | 9/11/2013 | Additional Information about Novo's Kickbacks involving Diabetes Educators |
| – | 9/26/2013 | Materiality of Novo's Failure to Comply with FDA REMS Requirements (memo not numbered) |
| 54 | 9/27/2012 | Novo Sales Representative [Potential Witness] 's Involvement with Clinical Pharmacists in New York and New Jersey |
| 55 | 9/27/2013 | Novo Sales Representative Married to High-Prescribing Physician |
| 56 | 11/6/2013 | Victoza Television Ad Campaign |
| 57 | 11/6/2013 | Victoza Obesity Marketing Strategy |
| 58 | 3/4/2014 | Former Novo Sales Representative *** |
| 59 | 3/4/2014 | Former Novo Sales Trainer *** |
| 60 | 3/4/2014 | Former Novo Sales Representative *** |
| 61 | 3/4/2014 | Former Novo Sales Representative and Trainer *** |
| 62 | 3/4/2014 | Fraudulent Prior Authorizations for Express Scripts Pharmacy Plans |
| 63 | 3/4/2014 | Former Novo Institutional Sales Representative *** |
| 64 | 3/14/2014 | Novo Speaker and High-Prescribing Physician *** |
| 65 | 3/14/2014 | Former Novo employees *** [7 individuals] |
| 66 | 4/14/2014 | Distinguishing Victoza Prescriptions Written for Weight Loss from those Written for Type 2 Diabetes |
| 67 | 5/6/2014 | Former Novo Corporate VP of Human Resources *** |
| 68 | 6/25/2014 | Current and Former Novo CDEs |
| 69 | 7/14/2014 | Former Novo Regional Account Executive *** |
| 70 | 1/27/2017 | Relators' Entitlement to Relators' Share |

14. Additionally, in the fall of 2016 and early in 2017, at DOJ's request, Mark Hanna and I supplied the DOJ with suggested language for the settlement "covered conduct" terms applicable to Novo Nordisk's REMS violations, in response to requests from DOJ. In my experience with several dozen FCA settlements in which I was the counsel handling settlement for my clients, this is not a common contribution by Relators, but shows the importance of the Relators' contributions and knowledge to the Government's ultimate recovery.

## V. Support and Cooperation to the Government (Senate Factor 2, DOJ Guideline 11 for Increase)

15.     The *Ferrara* Relators cooperated and assisted the Government throughout its investigation and up through reaching a global settlement in this matter. Relators cooperated in all requests for extensions of the seal, despite this resulting in the case lasting nearly seven years. At the specific request of the DOJ, Relators assisted with a related investigation, despite the personal risks attendant to that assistance and the long-term lasting harm.

## VI. Substantial Harm and Hardships Suffered by Relators (DOJ Guideline 14 for Increase)

16.     Following disclosures to the DOJ, Relators' service to the United States resulted in great personal and financial hardship. Both lost hundreds of thousands of dollars in future income and benefits.[3] Because of Novo Nordisk's continued disparagement of the Relators and by the disparagement from a Novo Nordisk speaker/physician, one Relator could not find work and the other had one pharmaceutical employer after another refuse to assign her to work in her hometown area. She was assigned to less lucrative and far-flung territories, necessitating long commutes away from her young children and even had to move out of state.

17.     Because of unexpected delays in the litigation, perhaps due to changes in Government staffing that could not be avoided (including Mr. Zeno's retirement, transfer of Civil Frauds DOJ attorney Ms. Erica Hitchings to DOJ in San Francisco, and departures of AUSAs Beverly Russell, Ted Radway, and Keith Morgan from the U.S. Attorney's Office), the *Ferrara* Relators endured more than 9 years of Novo Nordisk-caused retaliation as a result of

---

[3] While the Ferrara Relators resolved their personal claims with Novo Nordisk, their lifetime earnings will continue to be less than they would have been but for their assistance to the United States.

their efforts in support of their False Claims Act case. In my experience, rarely does retaliation continue and extend as far as it has in the case of the *Ferrara* Relators.

### a. Deceased Relator

18. My deceased client's extensive sales experience, particularly pharmaceutical sales, is recited in her Complaint. Despite her impressive resume, continuous job searching, and work with several professional recruiters, she was not able to find comparable employment after Novo Nordisk fired her. After termination, she was even publicly accosted by a Novo Nordisk Sales Representative, the son of a Novo Nordisk paid speaker, while visiting an oncology physician office. This mistreatment was a result of her efforts to assist the Government.

19. At the time of this lawsuit's filing, the Deceased Relator had been recently diagnosed with cancer. After a temporarily successful treatment, the Deceased Relator's cancer reappeared in multiple parts of her body and in the last years of her life she was largely confined to a wheelchair. She passed away in 2019, survived by her husband and three school-aged children. For all seven years of the Government's investigation, the Deceased Relator persevered with this *qui tam* action, despite her health condition. During her illness she met and conferred with the DOJ and assisted their lawyers' understanding about Novo's fraudulent REMS scheme.

### b. Co-Relator

20. The Co-Relator has over 20 years of experience in the medical and pharmaceutical sales industry. She continues to suffer retaliation for her protected whistleblowing activities and has endured a demotion, despite high performance rankings and sales results. She was forced to move from Ohio due to continued harassment and retaliation at the hands of Novo Nordisk employees. As a result, however, she was able to provide the Government with information about Novo's marketing activities in a different region.

21. At one point, a doctor who heard rumors about the Co-Relator's whistleblowing was reluctant to treat her medically. Three doctors took the extraordinary step of contacting her then-current pharmaceutical company manager and threatened that the drug company would lose its entire business with their hospital system if it continued to employ her. Additionally, a sales colleague was likewise threatened with loss of business, simply because of association with the Co-Relator. Most recently she has secured other employment, but at a substantial loss in pay and benefits than what she would have had if she had been able to stay in her Novo Nordisk position.

## VII. Concluding Statements

22. These Relators contributed substantial information for years into the investigation. They understood, due to their experience in the field and their personal educational and work backgrounds, the importance of the REMS restrictions and how and why the government needed to police this area of pharmaceutical marketing in order to protect patients' health. The *Ferrara* Relators taught the attorneys working on this matter about the Victoza REMS, how it actually operated in the field under Novo Nordisk, and its importance to patient safety—their teaching extended broadly to Mark Hanna, me, and our associates at Murphy Anderson PLLC, as well as counsel for other Relators and the many civil and criminal Department of Justice attorneys and agents who worked on the case.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: June 12, 2019

_____
Ann Lugbill