# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA, et al.,
ex rel. ELIZABETH W. KENNEDY,

        Plaintiffs,

        v.

NOVO A/S, et al.,

        Defendants.

Civil Action No. 13-1529 (RBW)

**UNDER SEAL**

## MEMORANDUM OPINION

The plaintiff/relator, ▮▮▮▮▮▮▮▮▮▮ Elizabeth W. Kennedy ("relator Kennedy"),
brought this civil action on behalf of the United States and various plaintiff states (the "Named
Plaintiff States") against the defendants, Novo Nordisk, Inc. ("Novo Nordisk"); Novo A/S; Novo
Nordisk A/S; and Novo Nordisk Foundation, pursuant to the qui tam provisions of the False
Claims Act ("FCA"), 31 U.S.C. § 3730 (2012), and analogous state statutes.  See Relator
Elizabeth W. Kennedy's Original Complaint ("Compl." or the "Complaint") ¶¶ 5–8.  Currently
pending before the Court is Relator Kennedy's Motion for Relator's Share of Award in False
Claims Act and Alternate Remedy Food, Drug, and Cosmetic Act Cases ("Kennedy's Mot.").
Upon careful consideration of the parties' submissions,[1] the Court concludes for the following
reasons that it must grant in part and deny in part relator Kennedy's motion.

---

[1] In addition to the filings already identified, the Court considered the following submissions in rendering its
decision: (1) the United States' Notice of Intervention in Part and Declination in Part ("United States' Not."); (2) the
Stipulation of Dismissal ("Stipulation"); (3) the memorandum in support of Relator Kennedy's Motion for Relator's
Share of Award in False Claims Act and Alternate Remedy Food, Drug, and Cosmetic Act Cases ("Kennedy's
Mem."); (4) the United States' Response to Relator Kennedy's Motion for Relator's Share of Award in the False
Claims Act and Alternative Remedy Food, Drug, and Cosmetic Act Cases ("United States' Opp'n"); (5) the
Declaration of ▮▮▮▮▮▮▮▮ ("Nix Decl."); (6) the Response of Name Plaintiff States to Relator Kennedy's Motion

# I.   BACKGROUND

The Court has previously set forth much of the factual background in its prior decisions regarding this case and other related cases,[2] see, e.g., United States ex rel. Ferrara v. Novo Nordisk, Inc., Civ. Action Nos. 11-74 (RBW), 11-1596 (RBW), 11-1662 (RBW), 13-221 (RBW), 17-791 (RBW), 2019 WL 4305503, at *2–4 (D.D.C. Sept. 11, 2019) (Walton, J.), which the Court will not fully reiterate here.  The Court will, however, briefly summarize the factual and procedural background pertinent to relator Kennedy's motion.

Beginning on October 15, 2010, relator Kennedy and the relators in the related cases (collectively, the "relators") filed their complaints against Novo Nordisk, alleging, inter alia, violations of the FCA.  See, e.g., Compl. at 1.  In July 2017, the United States, Novo Nordisk, and the relators entered into a settlement agreement (the "Federal Settlement Agreement") resolving the relators' claims (the "Covered Conduct"), and for purposes of "effectuating and formalizing" the Federal Settlement Agreement, the United States partially intervened in relator Kennedy's case "as to the Covered Conduct . . . to the extent that [relator Kennedy's] Complaint contained such claims."  United States' Not. at 1.  Pursuant to the Federal Settlement Agreement, Novo Nordisk was required to pay (1) $43,179,036.87 to the United States (the "Federal Settlement Amount"), see Kennedy's Mot., Exhibit ("Ex.") A (Settlement Agreement ("Federal Settlement Agreement")) ¶ 1(a), and (2) $3,320.963.13 to various Medicaid participating states, including the Named Plaintiff States, under analogous state statutes (the "Medicaid State Settlement Amount"), see id., Ex. A (Federal Settlement Agreement) ¶ 1(b).  Also in July 2017,

for Relator's Share of Award in False Claims Act and Alternate Remedy Food, Drug, and Cosmetic Act Cases ("Named Pl. States' Opp'n"); and (7) Relator Kennedy's Reply in Support of Motion for Relator's Share Award in False Claims Act and Alternate Remedy Food, Drug, and Cosmetic Act Cases ("Kennedy's Reply").

[2] This case is related to Civil Action Nos. 11-74, 11-1596, 11-1662, 13-331, 16-1605, and 17-791.  Those cases were dismissed with prejudice on July 25, 2019.  See Order at 6 (July 25, 2019), United States ex rel. Ferrara v. Novo Nordisk, Inc., Civ. Action No. 11-74, ECF No. 105.

the United States entered into a separate settlement agreement with Novo Nordisk, resolving the United States' claims against Novo Nordisk arising under the Food, Drug, and Cosmetic Act ("FDCA"), 21 U.S.C. § 301–335b (2012) (the "FDCA Settlement").  See Joint Stipulation for Dismissal and [Proposed] Order at 1 (Sept. 5, 2017), United States v. Novo Nordisk, Inc., Civ. Action No. 17-1820, ECF No. 3; see also Complaint ¶ 1, Novo Nordisk, Inc., Civ. Action No. 17-1820, ECF No. 1.[3]  In connection with the FDCA Settlement, Novo Nordisk paid the United States $12.15 million (the "FDCA Settlement Amount").  See Kennedy's Mot., Ex. B (Settlement Agreement ("FDCA Settlement Agreement")) ¶ 1.  On August 2, 2017, as part of the Federal Settlement Agreement, relator Kennedy stipulated to the "dismiss[al] with prejudice . . . [of] all claims asserted . . . against [Novo Nordisk] concerning the Covered Conduct." Stipulation §§ I, II.

On April 8, 2019, the Court "conclude[d] that relator Kennedy is . . . entitled to at least a fifteen percent share" of the Federal Settlement Amount and the Medicaid State Settlement Amount.  United States ex rel. Ferrara v. Novo Nordisk, Inc., Civ. Action Nos. 11-74 (RBW), 11-1596 (RBW), 11-1662 (RBW), 13-221 (RBW), 13-1529 (RBW), 17-791 (RBW), 2019 WL 1538249, at *15 (D.D.C. Apr. 8, 2019) (Walton, J.), amended and superseded by Civ. Action Nos. 11-74 (RBW), 11-1596 (RBW), 11-1662 (RBW), 13-221 (RBW), 13-1529 (RBW), 17-791 (RBW), 2019 WL 4305503 (D.D.C. Sept. 11, 2019) (Walton, J.).  Thereafter, the Court ordered relator Kennedy and the United States to brief the issues of the appropriate "relator's share percentage [of the Federal Settlement Amount and the Medicaid State Settlement Amount to award to relator Kennedy] and [relator Kennedy's] alleged entitlement to [part of] the United

---

[3] "A court may take judicial notice of court documents and other public records."  Farrell v. Pompeo, Civ. Action No. 17-490 (RBW), 2019 WL 6346922, at *3 n.3 (D.D.C. Nov. 27, 2019) (Walton, J.) (quoting HTC Corp. v IPCom GmbH & Co., KG, 671 F. Supp. 2d 146, 151 n.3 (D.D.C. 2009)).

States' recovery" of the FDCA Settlement Amount.  Order at 1 (May 8, 2019), ECF No. 113.

On June 12, 2019, relator Kennedy filed her motion, which is the subject of this Memorandum

Opinion.

On July 25, 2019, while relator Kennedy's motion was still pending, the Court ordered

the United States and the Named Plaintiff States to forthwith disburse to relator Kennedy the

"the sum of $6,543,734.55 . . . , which represents fifteen percent of the amount paid by Novo

Nordisk to the United States pursuant to the [Federal] Settlement Agreement, . . . and the sum of

$381,317.86, which represents fifteen percent of the portion of the separate settlements paid by

Novo Nordisk to the participating Named Plaintiff States obligated to pay a relator share[.]"

Order at 2 (July 25, 2019), <u>United States ex rel. Ferrara v. Novo Nordisk, Inc.</u>, Civ. Action No.

11-74, ECF No. 105; <u>see id.</u> at 6.

Then, on September 11, 2019, after the parties finished briefing relator Kennedy's

motion, the Court amended its April 7, 2019 decision as to, <u>inter alia</u>, relator Kennedy's

entitlement to a relator's share of the Medicaid State Settlement Amount.  <u>See United States ex</u>

<u>rel. Ferrara v. Novo Nordisk, Inc.</u>, Civ. Action Nos. 11-74 (RBW), 11-1596 (RBW), 11-1662

(RBW), 13-221 (RBW), 13-1529 (RBW), 17-791 (RBW), 2019 WL 4305503, at *15 (D.D.C.

Sept. 11, 2019) (Walton, J.).  Specifically, the Court amended its prior conclusion that relator

Kennedy was entitled to a fifteen percent share of the portion of the Medicaid State Settlement

Amount paid to the Named Plaintiff States, and instead concluded that relator Kennedy is only

"entitled to at least a fifteen percent share of . . . the portion of the . . . [Medicaid State]

Settlement Amount <u>paid to the states named as plaintiffs in her Complaint</u>"  <u>Ferrara</u>, 2019 WL

4305503, at *15 (emphasis added).  The Court included this additional language limiting relator

Kennedy's recovery of the Medicaid State Settlement Amount because "[t]he relators

collectively named thirty-one plaintiff states in their complaints, but relator Kennedy named only twenty-eight of those states as plaintiffs in her Complaint." Id. at *15 n.14.  Thus, the Court concluded that relator Kennedy is entitled to at least a fifteen percent share of the Federal Settlement Amount and at least a fifteen percent share of the portion of the Medicaid State Settlement Amount paid to the twenty-eight states named as plaintiffs in her Complaint (collectively, the "FCA Settlement Amount").

## II.   STANDARD OF REVIEW

"The [FCA] broadly proscribes the knowing and reckless submission of false claims for payment to the federal government or within a federally funded program."  United States ex rel. Heath v. AT & T, Inc., 791 F.3d 112, 115 (D.C. Cir. 2015) (citation omitted).  The statute "allows for a private person (a 'relator') to bring an action in the [g]overnment's name, and to recover a portion of the proceeds of the action, subject to the requirements of the statute."  United States ex rel. Batiste v. SLM Corp., 659 F.3d 1204, 1206 (D.C. Cir. 2011) (citations omitted) (citing 31 U.S.C. § 3730(b), (d)).  Regarding the portion of the proceeds that a relator may recover,

> [i]f the [g]overnment proceeds with an action brought by a person under subsection (b), such person shall . . . receive at least [fifteen] percent but not more than [twenty-five percent] of the proceeds of the action or settlement of the claim, depending upon the extent to which the person substantially contributed to the prosecution of the action.

31 U.S.C. § 3730(d)(1) (2018).  Additionally,

> the [g]overnment may elect to pursue its claim through any alternate remedy available to the [g]overnment, including any administrative proceeding to determine a civil money penalty.  If such alternate remedy is pursued in another proceeding, the person initiating the action shall have the same rights in such proceeding as such person would have had if the action had continued[.]

Id. § 3730(c)(5).

### III.   ANALYSIS

Relator Kennedy argues that

> [b]ased on the individual and collective contributions and sacrifice of [relator] Kennedy and the allied [r]elators, their relationship to the settlement outcome, and the legal authority supporting a fully compensatory award, [r]elator Kennedy deserves [(1)] at least [twenty-four percent] of the proceeds of the . . . [ ] [FCA] Settlement Amount and [(2) at least twenty-four percent of the proceeds of the] FDCA Settlement Amount.

Kennedy's Mem. at 4.  Because, as previously discussed, the Court has already concluded that relator Kennedy is entitled to at least a fifteen percent share of the FCA Settlement Amount, see Ferrara, 2019 WL 4305503, at *15, and ordered that a fifteen percent share be disbursed to her, see Order at 2 (July 25, 2019), Ferrara, Civ. Action No. 11-74, ECF No. 105, as to her request for a relator's share of the FCA Settlement Amount, the Court will address whether an additional nine percent relator's share of these funds, for a total relator's share of twenty-four percent, is appropriate.  However, the Court did not previously consider whether relator Kennedy is also entitled to a portion of the FDCA Settlement Amount, and therefore, as to that request, the Court must first address whether relator Kennedy is entitled to any portion of the FDCA Settlement before determining whether a twenty-four percent relator's share of any of these funds is appropriate.

**A.     Whether Relator Kennedy is Entitled to a Twenty-Four Percent Relator's Share of the FCA Settlement Amount**

A relator's share

> [a]ward[] above the statutory [fifteen percent] take[s] into account whatever information, work, and help of any kind the relator provides, apart from the mere filing of the action, that leads to a recovery by the [g]overnment and substantially contributes to the prosecution of the case without harming the [g]overnment's efforts.  District courts possess great discretion in making this award because of the complexities of many of the cases, the great variation in their factual settings, and the desire of Congress, in enacting the legislation, to reward [a] relator[] for [her] contribution to the success of the case.

6

United States ex rel. Shea v. Verizon Commc'ns, Inc., 844 F. Supp. 2d 78, 81 (D.D.C. 2012).

> The legislative history of the Senate version of the 1986 amendments to the FCA, which significantly enhanced a relator's portion of her FCA recovery, identified the following factors a court should consider in determining the relator's share: [(1)] the significance of the information provided by the relator, [(2)] the relator's contribution to the final outcome, and [(3)] whether the [g]overnment previously knew such information.

Id. at 81–82 (citing S. Rep. 99-345, at 28 (1986), as reprinted in 1986 U.S.C.C.A.N. 5266,

5293)).  These factors are known as the "Senate factors."  See id. at 82.  Additionally,

> in December of 1996, the Department of Justice issued a set of "Relator's Share Guidelines" ([the] "DOJ Guidelines" . . .)[,] which were developed to offer assistance to [Department of Justice] attorneys [w]hen trying to reach agreement with a [r]elator as to h[er] . . . share of the proceeds, or proposing an amount or percentage to the [C]ourt.

Id. at 83–84 (citation and internal quotation marks omitted).  The DOJ Guidelines, "which are

avowedly 'not exhaustive,'" list the following "[i]tems for consideration for a possible increase

in the [relator's share] percentage":

> [(1)] [t]he relator reported the fraud promptly[;] [(2)] [w]hen [s]he learned of the fraud, the relator tried to stop the fraud or reported it to a supervisor or the [g]overnment[;] [(3)] [t]he qui tam filing, or the ensuing investigation, caused the offender to halt the fraudulent practices[;] [(4)] [t]he complaint warned the [g]overnment of a significant safety issue[;] [(5)] [t]he complaint exposed a nationwide practice[;] [(6)] [t]he relator provided extensive, first-hand details of the fraud to the [g]overnment[;] [(7)] [t]he [g]overnment had no knowledge of the fraud[;] [(8)] [t]he relator provided substantial assistance during the investigation and/or pre-trial phases of the case[;] [(9)] [a]t h[er] deposition and/or trial, the relator was an excellent, credible witness[;] [(10)] [t]he relator's counsel provided substantial assistance to the [g]overnment[;] [(11)] [t]he relator and h[er] counsel supported and cooperated with the [g]overnment during the entire proceeding[;] [(12)] [t]he case went to trial[;] [(13)] [t]he FCA recovery was relatively small[;] [and] [(14)] [t]he filing of the complaint had a substantial adverse impact on the relator.

United States ex rel. Alderson v. Quorum Health Grp., Inc., 171 F. Supp. 2d 1323,

1333–34 (M.D. Fla. 2001).  And, the DOJ Guidelines list the following "[i]tems for

consideration for a possible decrease in the percentage":

> [(1)] [t]he relator participated in the fraud[;] [(2)] [t]he relator substantially delayed in reporting the fraud or filing the complaint[;] [(3)] [t]he relator, or relator's counsel, violated FCA procedures . . . [;] [(4)] [t]he relator had little knowledge of the fraud or [was] only suspicious[;] [(5)] [t]he relator's knowledge of the fraud was based primarily on public information[;] [(6)] [t]he relator learned of the fraud in the course of h[er] [g]overnment employment[;] [(7)] [t]he [g]overnment already knew of the fraud[;] [(8)] [t]he relator, or relator's counsel, did not provide any help after filing the complaint, hampered the [g]overnment's efforts in developing the case, or unreasonably opposed the [g]overnment[']s[] position in litigation[;] [(9)] [t]he case required a substantial effort by the [g]overnment to develop the facts and win the lawsuit[;] [(10)] [t]he case settled shortly after the complaint was filed or with little need for discovery[;] [and] [(11)] [t]he FCA recovery was relatively large.

Id. at 1334.

Relator Kennedy argues that "application of the Senate factors, DOJ [G]uidelines, and

relator share case law shows that relator Kennedy is entitled to a [twenty-four percent] share" of

the FCA Settlement Amount.  Kennedy's Mem. at 22.  The United States responds that "[t]he

Court should deny [relator] Kennedy's request for a relator share of [twenty-four] percent],

nearly the maximum possible recovery, and award her no more than [eighteen] percent of the

FCA Settlement Amount]" because relator "Kennedy met, but did not exceed, the expectations

of all relators to promptly disclose reliable, credible information, respond to requests for

assistance in the United States' investigation, and cooperate with the government in its resolution

of the case" and "[b]ased on the limited scope of [relator] Kennedy's contributions, the separate

and substantial investigation that the United States was required to conduct, and the fact this case

was resolved prior to litigation and trial, the demanded relator share award would be an

inappropriate windfall."  United States' Opp'n at 18 (footnote omitted).  The Named Plaintiff

States join the United States' arguments.  See Named Pl. States' Opp'n at 1.

8

The Court first applies the Senate factors in assessing the extent of relator Kennedy's involvement in the case.  As to the first and second factors, "the significance of the information provided by [ ] relator[] [Kennedy]" and "relator[] [Kennedy's] contribution to the final outcome[,]" Shea, 844 F. Supp. 2d at 78, the United States acknowledges that relator "Kennedy's [C]omplaint put the United States on notice of" both categories of settled conduct[,]" United States' Opp'n at 22; however, the United States represents that relator Kennedy's involvement in the case was limited and that "[t]he United States undertook a substantial investigation of [r]elator[] [Kennedy's] allegations regarding Novo Nordisk that involved agents from six different government agencies[,]" id. at 26 (detailing the "numerous investigative steps [taken by the United States] to evaluate the full scope of the alleged conduct"); cf. Shea, 844 F. Supp. 2d at 82–83 (concluding that the relator contributed significant information and made a significant contribution to the final outcome where "[o]ver [eighty percent] of the $91.5 million recovery was from two specific categories of surcharges, both of which [the relator] had urged the [g]overnment to prioritize and focus on in the investigation"; "participated fully in all aspects of the [g]overnment's investigation . . . [and] spent hundreds of hours each year on the case"; and "worked closely with his counsel . . . to respond to all of the substantive arguments [the defendant] made in denying its liability").  As to the third Senate factor, "whether the [g]overnment previously knew such information[,]" Shea, 844 F. Supp. 2d at 82, as just noted, the United States does not dispute that relator "Kennedy's [C]omplaint put the United States on notice of" both categories of settled conduct, United States' Opp'n at 22.

The Court next applies the DOJ Guidelines, which also assess relator Kennedy's involvement in the case.  Certain factors articulated in the DOJ Guidelines weigh in favor of awarding a higher relator's share to relator Kennedy.  Specifically, relator Kennedy "reported the

fraud promptly" and [w]hen [s]he learned of the fraud, [she] . . . reported it to a supervisor[.]" <u>Alderson</u>, 171 F. Supp. 2d at 1333; <u>see</u> Nix Decl. ¶¶ 5–6 (██████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

██████████████████████). Additionally, her "[C]omplaint warned the [g]overnment of a significant safety issue[,]" <u>Alderson</u>, 171 F. Supp. 2d at 1333; <u>see</u> United States' Opp'n at 22 (stating that relator "Kennedy's [C]omplaint put the United States on notice about [ ] the MTC Risk Conduct[,]" which "included allegations [that] . . . certain Novo Nordisk sales representatives, executing instructions from Novo Nordisk's Vice President, Diabetes Marketing, told primary care physicians in June 20111 that there were no new safety concerns with Victoza . . . , which was a false or misleading message"), and "exposed a nationwide safety practice[,]" <u>Alderson</u>, 171 F. Supp. 2d at 1333; <u>see</u> United States' Opp'n at 21 (stating that "[b]oth categories of settled conduct involved nationwide allegations"). And, prior to the filing of relator Kennedy's Complaint, "[t]he [g]overnment had no knowledge of the fraud." <u>Alderson</u>, 171 F. Supp. 2d at 1333; <u>see</u> United States' Opp'n at 22 (stating that relator "Kennedy's [C]omplaint put the United States on notice of" both categories of settled conduct). Moreover, relator Kennedy "provided [ ] first-hand details of the fraud to the [g]overnment." <u>Alderson</u>, 171 F. Supp. 2d at 1333; United States' Opp'n at 22 (providing examples of the types of first-hand information that relator Kennedy provided to the government). And, prior to relator Kennedy's filing of the Complaint, "[t]he [g]overnment had no knowledge of the fraud." <u>Alderson</u>, 171 F. Supp. 2d at 1333; <u>see</u> United States' Opp'n at 22 (stating that relator "Kennedy's [C]omplaint put the United States on notice of" both categories of settled conduct). Finally, "[t]he filing of

the [C]omplaint had a substantial adverse impact on [ ] relator [Kennedy]."  <u>Alderson</u>, 171 F.

Supp. 2d at 1334; <u>see</u> Nix Decl. ¶¶ 9, 12 (████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████).

       However, two other factors included in the DOJ Guidelines weigh against awarding a

higher relator's share to relator Kennedy.  First, "[t]he case required a substantial effort by the

[g]overnment to develop the facts and win the lawsuit."  <u>Alderson</u>, 171 F. Supp. 2d at 1334; <u>see</u>

United States' Opp'n at 26 (detailing the "numerous investigative steps [taken by the United

States] to evaluate the full scope of the alleged conduct[,]" which consumed "well over 1,000

hours[,]" and required "obtain[ing] from Novo Nordisk[] through subpoenas . . . over 3.5 million

pages of documents"; "obtain[ing] 750,000 pages of material through subpoenas [issued] to eight

non-parties"; "interview[ing] at least [twenty-seven] former Novo Nordisk employees, other than

[the] [r]elators, in the course of the investigation"; and "me[eting] in-person with Novo Nordisk

counsel eight times, and sp[eaking] by phone at least six times").  Second, "[t]he FCA recovery

was relatively large."  <u>Alderson</u>, 171 F. Supp. 2d at 1334; <u>see</u> Kennedy's Mot., Ex. A (Federal

Settlement Agreement) ¶ 1(a), (b) (requiring Novo Nordisk to pay $46,499,999.90 to resolve the

relators' claims).

       Having carefully considered both the Senate factors and the DOJ Guidelines, the Court

concludes that relator Kennedy is entitled to a relator's share above the statutory minimum, but

below the statutory maximum.  While relator Kennedy's disclosure of Novo Nordisk's

fraudulent conduct was informative, significant, and caused her to experience adverse

consequences as a result of pursuing this <u>qui tam</u> action, her limited involvement in the case,

coupled with the facts that the case did not proceed to trial and that the FCA Settlement Amount is considerable, cause the Court to agree with the government that an eighteen percent relator's share of the FCA Settlement Amount is appropriate.  See, e.g., United States ex rel. Nudelman v. Int'l Rehabilitation Assocs., Inc., Civ. Action No. 00-cv-1837, 2007 WL 9798631, at *8–9 (E.D. Pa. May 23, 2007) (awarding an eighteen percent relator share where the relator reported the fraud to his supervisors and the government, lost his job as a result of his whistleblowing activities, and the recovery was small, but the relator's involvement in the case was limited); cf. United State ex rel. Wittenberg v. Pub. Utility Dist. No. 1 of Skamania Cty., Case No. 3:14-cv-00213-AC, 2016 WL 6518438, at *5–6 (D. Or. Nov. 1, 2016) (awarding a twenty percent relator share where the relator reported the fraud to his supervisors and the relator's involvement in the case was limited, but the recovery was small).  Accordingly, the Court will grant relator's Kennedy motion to the extent that it seeks a relator's share of the FCA Settlement Amount above the statutory minimum, but will deny it to the extent that it seeks a twenty-four percent relator's share of the FCA Settlement Amount, and will therefore award relator Kennedy an eighteen percent share of the FCA Settlement Amount.

**B.    Whether Relator Kennedy is Entitled to a Relator's Share of the FDCA Settlement Amount**

Relator Kennedy argues that "the FDCA Settlement [Amount] is an alternate remedy under 31 U.S.C. § 3730(c)(5) [(the 'alternate remedy provision')] because of the extensive factual overlap with relator Kennedy's [ ] Complaint[,]" Kennedy's Mem. at 9 (capitalization removed), and because "government intervention is no exception to [the] alternate remedy [provision,]" id. at 10 (capitalization removed).  The United States responds that relator "Kennedy is not entitled to any [relator's] share of the FDCA [S]ettlement" Amount because relator "Kennedy dismissed any claim under [§] 3730(c)(5) to a share of the FDCA [S]ettlement

[Amount][,]" United States' Opp'n at 6 (capitalization removed), and "the FDCA [S]ettlement [Amount] is not an alternate FCA remedy under . . . § 3730(c)(5)[,]" id. at 8 (capitalization removed).

Although the District of Columbia Circuit has not addressed the circumstances in which the alternate remedy provision applies, other circuits have concluded that the alternate remedy provision of the FCA does not apply when the government elects to intervene in a qui tam action. See, e.g., United States ex rel. Bledsoe v. Cmty Health Sys., Inc. 342 F.3d 634, 649 (6th Cir. 2003) ("hold[ing] that a settlement pursued by the government in lieu of intervening in a qui tam action asserting the same FCA claims constitutes an 'alternate remedy' for purposes of 31 U.S.C. § 3730(c)(5)"); United States ex rel. Barajas v. United States, 258 F.3d 1004, 1010 (9th Cir. 2001) ("An alternate remedy under § 3730(c)(5) is a remedy achieved through the government's pursuit of a claim after it has chosen not to intervene in a qui tam relator's FCA action." (citing United States ex rel. LaCorte v. Wagner, 185 F.3d 188, 192 (4th Cir. 1999); United States ex rel. Dunleavy v. Cty. of Del., 123 F.3d 734, 739 (3d Cir. 1997)). But see United States v. L-3 Commc'ns EOTech, Inc., 921 F.3d 11, 26 (2d Cir. 2019) (expressing "skeptic[ism] that § 3730(c)(5) is so limited, given other FCA provisions that envision the government's pursuit of other proceedings even after it has intervened in a qui tam action"). In Barajas, the Ninth Circuit explained:

> The use of the term "alternate remedy" makes clear that the government must choose one remedy or the other; it cannot choose both. If the government chooses to intervene in a relator's action, and if the government recovers any proceeds in the action, the relator has a right to a share of those proceeds. If the government chooses not to intervene in the relator's action, but, instead, chooses to pursue "any alternate remedy," the relator has a right to recover a share of the proceeds of the "alternate remedy" to the same degree that he or she would have been entitled to a share of the proceeds of an FCA action.

258 F.3d at 1010.

Here, because "[a]n alternate remedy under § 3730(c)(5) is a remedy achieved through the government's pursuit of a claim [only] after it has chosen <u>not</u> to intervene in a qui tam relator's FCA action[,]" <u>Barajas</u>, 258 F.3d at 1010 (emphasis added), and because the United States chose to intervene in relator Kennedy's <u>qui tam</u> action, <u>see</u> United States' Not. at 1, the alternate remedy provision is not applicable to relator Kennedy and therefore, she is not entitled to a relator's share of the FDCA Settlement Amount.

Thus, the Court concludes that the United States' execution of the FDCA Settlement does not constitute an alternate remedy pursuant to § 3730(c)(5) and that relator Kennedy is not entitled to a relator's share of the FDCA Settlement Amount. Accordingly, the Court will deny relator Kennedy's motion, to the extent that it seeks a relator's share of the FDCA Settlement Amount.

## IV. CONCLUSION

For the foregoing reasons, the Court concludes that it must grant in part and deny in part relator Kennedy's motion. Specifically, the Court grants the motion to the extent that it seeks a relator's share of the FCA Settlement Amount above the statutory minimum, but denies the motion in all other respects. Accordingly, the Court awards relator Kennedy an eighteen percent relator's share of the FCA Settlement Amount, rather than the twenty-four percent relator's share that she requested, but declines to award relator Kennedy any portion of the FDCA Settlement Amount.

**SO ORDERED** this 6th day of May, 2020.[4]

REGGIE B. WALTON
United States District Judge

---

[4] The Court will contemporaneously issue an Order consistent with this Memorandum Opinion.